UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KERRY L. MARSHALL,

Plaintiff,

-v-

CITY OF NEW YORK, YVONNE ROMAN, SARAH VAUGHN, GREGORY LANE, and PATRICIA MANCE,

Defendants.

12 Civ. 7128 (DLC)

OPINION AND ORDER

APPEARANCES:

For the Plaintiff:

Kerry L. Marshall, pro se
17012-014
F.C.I.
P.O. Box 1000
Loretto, PA 15940

For the Defendants:

James F. Horton
Assistant Corporation Counsel, City of New York
100 Church Street, 3rd Floor
New York, NY 10007

DENISE COTE, District Judge:

Plaintiff Kerry L. Marshall ("Marshall"), proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 for compensatory and punitive relief against five defendants -- the

City of New York ("City"), Officer Sarah Vaughn-Sam ("Officer Vaughn-Sam"), Yvonne Roman ("Roman"), Lieutenant Gregory Lane ("Lieutenant Lane"), and Sergeant Patricia Mance ("Sergeant Mance") -- for alleged constitutional violations arising out of his arrest in April 2011 and the related impoundment of his vehicle. Marshall alleges that the individual defendants violated his Fourth and Fourteenth Amendment rights, and he also seeks to hold the City responsible based on Monell liability. The defendants have moved to dismiss this action. For the following reasons, the motion is granted.

BACKGROUND

The following facts are as alleged in the second amended complaint ("SAC") and are assumed to be true. On or about April 8, 2011, Officer Vaughn-Sam stopped Marshall as he was exiting his vehicle and questioned him regarding his parking location and the tinted glass over his vehicle's license plate. Marshall responded that he could remove the tinted glass if it were a problem. Officer Vaughn-Sam asked Marshall to produce his driver's license, registration, and proof of vehicle insurance. Marshall provided his license but was unable to produce the registration and proof of insurance. He was arrested and taken to New York Police Department's 28th Precinct where he was

placed in confinement. His vehicle was impounded.

Shortly thereafter, Marshall advised Officer Vaughn-Sam where to locate the registration and proof of insurance in the impounded vehicle. Both were expired. Marshall remained in confinement for another five hours. He was then released with three citations for violating New York City traffic laws -- Operating an Unregistered Vehicle, New York Vehicle and Traffic Law ("VTL") §§ 401(1)(a) & 401(18); Operating an Uninsured Vehicle, VTL § 319; and Obstruction of a License Plate, VTL § 402(1)(b) & § 402(8). The citations eventually concluded in Marshall's favor.

Marshall's vehicle was not released to him at the time of his release. Officer Vaughn-Sam told Marshall to return with valid registration, insurance, and title. Officer Vaughn-Sam provided Marshall with a property voucher with instructions for retrieving his vehicle. Marshall noticed "that the back side of the property voucher reinforced Officer Vaughn's instructions regarding (120) days to retrieve his car or be faced with civil forfeiture."

Although Marshall's complaint lays out many details regarding the process of retrieving his vehicle, only a few are relevant for purposes of the present motion. Marshall made his first attempt to retrieve his vehicle on June 19, 2011 -- or 59

days after his release. Marshall eventually learned that his vehicle had been sold at auction ten days after his arrest. Marshall has since filed two claims for the proceeds from the sale of his vehicle with the Office of the New York City Comptroller. He has also filed a complaint with the Civilian Complaint Review Board, which was forwarded to Internal Affairs. Marshall has not heard back from Internal Affairs.

On September 20, 2012, Marshall filed the present action.[1] The SAC includes six causes of action. The first is brought against Officer Vaughn-Sam under the Fourth Amendment, and it alleges that she lacked reasonable suspicion to initiate an investigative stop and that his arrest and the duration of his confinement were unreasonable. The second, third, and fourth causes of action are brought against Officer Vaughn-Sam, Lieutenant Lane, and Sergeant Mance under the Due Process Clause of the Fourteenth Amendment, and they allege that these individuals deprived Marshall of his property without procedural

[1] Marshall's initial complaint was amended twice to add individual officer defendants who had been identified by the City. Subsequent to Marshall's filing of these amended complaints naming the newly identified individual officer defendants, this Court issued Valentin orders stating that the Clerk of Court would issue summonses upon these defendants and that Marshall had 120 days from the date of the order to serve these defendants. Notwithstanding the Court's guidance, Marshall failed to serve the SAC upon Lieutenant Lane and Sergeant Mance.

due process. The fifth is brought against Roman, who is a Case Manager with the Office of the New York City Comptroller, under the Equal Protection Clause of the Fourteenth Amendment, and it alleges that she treated Marshall unequally in responding to his New York Freedom of Information Law ("FOIL") request for a copy of his file. The sixth seeks to impose Monell liability upon the City for failure to train and failure to supervise the individual defendants.

On November 1, 2013, the defendants moved to dismiss the SAC. The motion was fully submitted as of December 20.

DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475

(2d Cir. 2009). Moreover, pleadings filed by pro se plaintiffs are to be construed liberally. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted). "The rule favoring liberal construction of pro se submissions is especially applicable to civil rights claims." Ortiz v. McBride, 323 F.3d 191, 194 (2d Cir. 2003). A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

To sustain a § 1983 claim, the plaintiff must show that he was "deprived of rights, privileges, or immunities secured by the Constitution and laws [of the United States]" by a person acting under color of state law. Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (citation omitted). Here, Marshall alleges violations of the Fourth and Fourteenth Amendments.

1. Fourth Amendment Claim

Marshall's first cause of action arises under the Fourth Amendment. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. A "seizure" includes both an arrest and an investigative stop. United States v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992).

Construing Marshall's complaint liberally, his Fourth Amendment claim includes a challenge both to his arrest and to the initial investigative stop made by Officer Vaughn. Accordingly, both the arrest and stop will be addressed in turn.

In assessing Fourth Amendment claims of false arrest brought under § 1983, courts look to the law of the state in which the arrest occurred. Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007). Under New York state law, a claim of false arrest requires a showing that the confinement was not privileged. Liranzo v. United States, 690 F.3d 78, 96 (2d Cir. 2012). Where probable cause for the arrest exists, an arrest by a law enforcement officer is privileged. Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013).

The requirement of probable cause does not create a high bar for law enforcement. "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. (citation omitted). "The inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Id. (citation omitted).

One of the three citations issued against Marshall was for operating an unregistered vehicle in violation of VTL § 401(1)(a). This provision provides that "[n]o motor vehicle shall be operated or driven upon the public highways of this state without first being registered in accordance with the provisions of this article, except as otherwise expressly provided in this chapter." VTL § 401(1)(a).

> A violation of [this provision] shall be punishable by a fine of not less than seventy-five nor more than three hundred dollars, or by imprisonment for not more than fifteen days, or by both such fine and imprisonment except, if the violation consists of failure to renew a registration which was valid within sixty days, the fine shall be not less than forty dollars.

VTL § 401(18).

Based on the allegations in the SAC, Officer Vaughn-Sam had probable cause to arrest Marshall. He had just exited his a vehicle and, despite being able to produce his driver's license, was unable to produce registration for the vehicle. A reasonable police officer in her situation was entitled to conclude that Marshall had operated the vehicle without valid registration, and thus had committed a crime -- in this case a traffic violation that is punishable by imprisonment.

Marshall also challenges the duration of his confinement following the arrest. He asserts that, after instructing Officer Vaughn-Sam where to find the registration in his

impounded vehicle, he remained in confinement for an additional five hours.

This claim is foreclosed by Russo, 479 F.3d at 205-10. Russo recognized, in applying and clarifying Baker v. McCollan, 443 U.S. 137 (1979), that an unreasonably prolonged detention is a cognizable Fourth Amendment violation. The detention must, however, be prolonged. Russo, 479 F.3d at 209. In Baker, the Supreme Court rejected a constitutional claim based on a detention that extended beyond the appropriate point of release by "a period of days." 443 U.S. at 144. Marshall's claim, which is based on just a few hours, is not a cognizable Fourth Amendment violation.

Marshall further alleges that, leaving aside the arrest itself, Officer Vaughn-Sam was not authorized to initiate the investigative stop. He alleges that "[s]he did not have reasonable suspicion that a crime was afoot or that a traffic violation had occurred as she not observed a traffic violation, nor had Plaintiff's car been reported stolen."

In order to prevail on a § 1983 claim based on an investigative stop, the plaintiff must demonstrate that the stop was without "reasonable suspicion." Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005). "A reasonable suspicion of wrongdoing is something stronger than a mere hunch,

but something weaker than probable cause. To establish reasonable suspicion, officers must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." Hartline v. Gallo, 546 F.3d 95, 100 (2d Cir. 2008) (citation omitted).

One of the other three citations issued against Marshall was for obstructing his license plate. The provision reads, in relevant part:

> Number plates shall be kept clean and in a condition so as to be easily readable and shall not be covered by glass or any plastic material, and shall not be knowingly covered or coated with any artificial or synthetic material or substance that conceals or obscures such number plates or that distorts a recorded or photographic image of such number plates, and the view of such number plates shall not be obstructed by any part of the vehicle or by anything carried thereon . . . .

VTL § 402(1)(b). Its penalty provision states that "violation of this section shall be punishable by a fine of not less than twenty-five nor more than two hundred dollars." VTL § 402(8).

Again, based on the allegations in the SAC, Officer Vaughn-Sam had reasonable suspicion to conduct an investigative stop of Marshall. She saw that the license plate of Marshall's vehicle was obstructed by tinted glass, in violation of VTL § 402(1)(b). Thus, contrary to Marshall's allegations, Officer Vaughn-Sam was entitled to stop Marshall because she personally observed a traffic violation.

Marshall's only response is to argue that, because New York City vehicle laws are infractions not punishable by imprisonment, an officer cannot initiate an investigative stop or an arrest based on a violation of these laws. Marshall's argument is foreclosed by United States v. Scupo, 19 F.3d 777, 781 (2d Cir. 1994), which held that a police officer has the authority to stop or arrest an individual for violation of the traffic laws. For these reasons, the Fourth Amendment Claim is dismissed.[2]

2. Due Process Claims

Marshall's second, third, and fourth claims arise under the Due Process Clause of the Fourteenth Amendment, as he alleges a deprivation of his property without procedural due process. When such a claim is "based on random, unauthorized acts by state employees," "the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 531-33

[2] Because Marshall has failed to plead a Fourth Amendment violation, this Opinion does not reach the parties' dispute over whether Officer Vaughn-Sam is entitled to qualified immunity.

(1984)).

Marshall's Due Process claim can be summarized as follows. He alleges that, whereas New York City Administrative Code § 14-140(b) outlines the proper set of procedures for retaining and returning property seized in connection with a crime, Officer Vaughn-Sam, Lieutenant Lane, and Sergeant Mance violated § 14-140, and their conduct resulted in his vehicle being sold at auction before he was able to retrieve it.

Marshall fails to state a claim for which relief may be granted. As alleged, Marshall's claim is based on the random and unauthorized conduct of Officer Vaughn-Sam, Lieutenant Lane, and Sergeant Mance. Thus, the existence of a meaningful postdeprivation remedy would bar his claims. In his pleadings, however, Marshall acknowledges the existence of postdeprivation remedies. Indeed, he has filed two claims with the Comptroller.

His pleadings contain no allegation, even when liberally construed, that this remedy is not "meaningful." The mere fact that Marshall has not prevailed in these processes, or other processes provided by the City and the State, does not permit this Court to conclude that there is no "meaningful" remedy available to him.

3. Equal Protection Claim

Marshall's fifth cause of action presents an Equal Protection Claim against Roman, alleging that she intentionally treated Marshall differently from others in processing his FOIL request. "The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike." Brown v. City of Syracuse, 673 F.3d 141, 151 (2d Cir. 2012) (citation omitted). Accordingly, if the government selectively enforces an otherwise neutral policy against an individual on the basis of impermissible considerations, such enforcement can give rise to a violation of the Equal Protection Clause. To establish such a claim, the plaintiff must demonstrate that "(1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id. at 151-52 (citation omitted).

Marshall alleges that Roman did not timely or otherwise respond to his FOIL request for a copy of his case file, which she -- as a Case Manager in the Comptroller's office -- had custody and control of. He alleges that she intentionally

treated him differently from others similarly situated. He further alleges that her conduct impeded his ability to bring timely prosecution of a claim under New York state law.

This claim must be dismissed. Marshall fails to plead with sufficient specificity to provide fair notice the two elements required of an Equal Protection Claim based on selective enforcement. He does not describe, even generally, the others similarly situated in the FOIL process who were treated differently by Roman, nor explain in what way Roman's conduct towards him was motivated by an impermissible consideration. Marshall's allegations therefore fail to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation omitted). Accordingly, the Equal Protection Claim is dismissed.

4. Monell Claim

Marshall further seeks to hold the City responsible pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). "Section 1983 'imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights.'" Okin v. Village of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009)

(quoting Monell, 436 U.S. at 692).

> Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.

Id. (citation omitted). As a result, to state a Monell claim against a city for the unconstitutional actions of its employees, "a plaintiff is required to plead . . . three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).

Marshall has failed to plead adequately any of the previously discussed constitutional violations against the individual defendants. Correspondingly, as there has been no denial of constitutional rights, there can be no Monell liability. Accordingly, the Monell claim is dismissed.

CONCLUSION

Defendants' November 1, 2013 motion to dismiss is granted. The Clerk of Court shall close the case.

SO ORDERED:

Dated: New York, New York
April 15, 2014

DENISE COTE
United States District Judge

COPIES MAILED TO:

Kerry L. Marshall
17012-014
F.C.I.
P.O. Box 1000
Loretto, PA 15940